UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESOUZA'S DRYWALL SERVICES, LLC,
and NEREU JOSE DESOUZA,

         Plaintiffs,

v.

DRYWALL CONTRACTOR INC.,

         Defendant.
_____/

Case No. 1:23-cv-370

Hon. Ray Kent

**OPINION**

Plaintiffs Desouza's Drywall Services, LLC ("DDS") and Nereu Joseph Desouza ("Neuru Desouza") have filed three lawsuits against defendant Drywall Contractor Inc. d/b/a Associated Drywall Partners ("ADP"): *DDS and Neuru Desouza v. ADP*, 1:21-cv-618 ("*DDS I*"); *DDS and Neuru Desouza v. ADP*, 1:23-cv-369 ("*DDS II*"); and the present lawsuit, *DDS and Neuru Desouza v. ADP*, 1:23-cv-370 ("*DDS III*"). This matter is now before the Court on ADP's motion to dismiss *DDS III* (ECF No. 6).

**I.    Background**

*DDS III* involves one count for breach of contract. *DDS III* Compl. (ECF No. 1, PageID.4-5). Plaintiffs identified *DDS III* as arising out of the same transaction or occurrence as *DDS I*, *i.e.*, "**There is a pending civil action in this Court arising out of the transaction or occurrence alleged in the Complaint. Case No. 1:21-cv-618**" (emphasis in original). *Id*. at

PageID.1. Based on these allegations, the Court found that the two cases were related for purposes of judicial assignment under W.D. Mich. LCivR 3.3.1.[1]

Like *DDS I*, the breach of contract claim in *DDS III*[2] is allegedly based on written documents, text messages, emails, and oral agreement(s) with respect to work performed at the Knapp's Corner project and the Aspen Lakes project:

> 8. Beginning in 2017, the Plaintiff Desouza's Drywall, LLC entered into an agreement with the Defendant, Drywall Contractor, Inc. d/b/a Associated Drywall Partners ("Associated Drywall").
>
> 9. The Plaintiffs initially believed that there had been a written subcontractor agreement between the parties but none has been produced.
>
> 10. The terms of the oral agreement included Plaintiffs' promise to provide building services in the form of Drywall finishing for Defendant ADP in return for Defendant ADP compensating Plaintiffs consistent with the completion of work for a certain amount per square footage of work done.
>
> 11. Pursuant to the oral agreement, Plaintiff would provide drywall finishing services in a timely and professional manner, according to industry standards, and with the highest degree of care and skill for the Knapps Corner Flat Apartments, located at 3000 Knapp Street North East, Grand Rapids, Michigan 49505.
>
> 12. Plaintiffs and Defendant both agreed that Defendant would pay Plaintiffs $0.27 per square foot for the first and second floor of each building for the Knapps Corner Flat Apartments Project. Plaintiffs and Defendant both agreed that Defendant would pay Plaintiffs $0.28 per square foot for the third floor of each building. Defendant also promised to pay Plaintiffs an additional $0.01 per square foot after touch ups were completed for buildings one (1), three (3), and five (5). *Exhibit C, Text Message / Email correspondence.*
>
> 13. The Plaintiffs finished drywall in several buildings and relied exclusively upon the Defendant's representation of the amount of square footage in these construction projects.

---

[1] *See* Case Assignment Review (ECF No. 3) (finding that for purposes of assigning case, *DDS III* is related to both *DDS I* and *DDS II* as set forth in W.D. Mich. LCivR 3.3.1(d)(iii)(A)(2) (which provides that "Related cases - Cases related to cases already assigned to a judge shall be assigned or transferred as set out below . . . Cases are deemed related when a filed case . . . (2) arises out of the same transaction or occurrence and involves one or more of the same parties as a pending suit.").

[2] *See DDS III*, Second Amended Complaint (ECF No. 24).

> 14.     In early 2018, Michael Estebbs, a subcontractor of G&M Construction, which was subcontracted by Defendant ADP to hang drywall, informed Plaintiffs the amount G&M Construction was compensated per square footage.
>
> 15.     G&M Construction also informed Plaintiffs of the total square footage of the project for Defendant ADP, which was a different amount than the square footage quoted by Defendant ADP to Plaintiffs, which resulted in Plaintiffs receiving less compensation than G&M Construction for the same project.
>
> 16.     Plaintiffs, upon discovering the discrepancies in square footage of work done, raised the issue with Defendants.
>
> 17.     Plaintiffs informed Defendant ADP that they had learned from G&M Construction that Defendant ADP misrepresented the total amount of square footage.
>
> 18.     On June 22, 2018, as a result of the conversations described in paragraph [sic] 14 through 17, Defendants fired Plaintiffs and unjustly terminated the agreement before work could be finished on the Knapps Corner Flat Apartments and Aspen Lake Apartments Projects.
>
> 19.     Defendant's early termination of the original agreement was a material breach of the agreement as well as a retaliatory act, which occurred after Plaintiff informed Defendant of the discrepancies in square footage.
>
> 20.     Defendant materially breached the contract by failing to pay the full amount owed to Plaintiff as per the correct amount of square footage. Defendant further breached the contract by unjustly terminating the contract, prior to Plaintiff's completion of the Knapps Corner Flat Apartments and Aspen Lakes Apartments projects, as a retaliatory act.

Compl. at PageID.2-4.

In their breach of contract claim, plaintiffs incorporate the previous allegations and, as in *DDS I*, allege damages for work performed at the Knapp's Corner project and the Aspen Lakes project:

> 22.     Per the agreement, Plaintiff DDS would be compensated per square foot for each building for the Knapps Corner Flats Apartment and Aspen Lakes Apartment projects.
>
> 23.     Plaintiff performed the services required of him under this agreement.

3

24. Defendant ADP materially breached the contract by failing to fully compensate Plaintiff for the accurate and correct amount of square footage for the Knapps Corner Flat Apartment and Aspen Lake Apartment projects.

25. Defendant further breached the agreement upon the early and unjust termination of the agreement preventing Plaintiff from concluding the work on the Knapps Corner Flat Apartment project.

26. Defendant's early and unjust termination of the contract was a retaliatory act taken against Plaintiff in response to Plaintiff's lawful exercise of their rights under the contract, in clear violation of public policy and implied covenant of good faith and fair dealing.

27. Plaintiff believes and alleges that Defendant's decision to terminate the contract was motivated by Plaintiff's good faith complaints and requests for payment and adequate services.

28. Plaintiff's good faith complaints were grounded on Plaintiff's belief that Defendant misrepresented the square footage of various buildings of the construction project.

29. Defendant's retaliatory termination of the contract was not based on any legitimate business reason or performance issue, but rather solely intended to punish Plaintiff for exercising their contractual rights.

30. Defendant's conduct was willful, malicious, and in complete disregard of Plaintiff's rights under the contract.

31. Defendant's retaliatory termination of the contract constitutes a material breach of the contract and a violation of the implied covenant of good faith and fair dealing that is inherent in every contract. Defendant's breach of the contract and its bad faith conduct has caused Plaintiff to suffer monetary damages.

32. Specifically, the Plaintiffs suffered the loss of the expected income from the completion of the project.

33. Additionally, Plaintiffs have suffered damages due to the necessity of having to pursue claims against the Defendant for the breach of the parties' agreement.

*Id*. at PageID.4-6.

## II. ADP's motion to dismiss

### A. Legal standard

ADP contends that *DDS III* should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because the complaint involves impermissible claim splitting. A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

The Court previously explained "claim splitting" as follows:

> Claim splitting—a species of the doctrine of res judicata—based on the same set of facts occurs where a party brings two different suits presenting two different theories. *Wilkins v. Jakeway*, 183 F.3d 528, 535 (6th Cir. 1999) (citing Restatement (Second) of Judgments § 24, 25 cmt. a, d). Res judicata, or more precisely here, claim preclusion, provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in a prior action." *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995). As the Sixth Circuit has explained, "[e]ssentially, claim splitting is the same as res judicata, but with a presumption of a final judgment instead of an actual final judgment." *Waad v. Farmers Ins. Exch.*, 762 F. App'x 256, 260 (6th Cir. 2019) (citing *In re Alfes*, 709 F.3d 631, 638 (6th Cir. 2013)). The doctrine applies when no final judgment has been entered in the first suit, but the first suit would bar the second suit if it were final. *Id.* The rule against duplicative litigation is related to the doctrine of res judicata. *See Waad*, 762 F. App'x at 260 (quoting *Curtis v. Citibank*, 226 F.3d 133, 138 (2d Cir. 2002)). Under this doctrine, a district court may " 'stay or dismiss a suit that is duplicative of another federal court suit' using 'its general power to administer its docket.' " *Id.* quoting *Curtis*, 226 F.3d at 138 (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

> Defendant argues that the rule against claim splitting applies in this case because, if the Court enters a final judgment in the 2019 Case, all of the requirements will be met for claim preclusion to apply in this case. Those elements are: (1) a final decision on the merits in the first action by a court of competent jurisdiction; (2) a second action between the same parties or their privies; (3) an issue is raised in the second action that was actually litigated or should have been litigated in the first action; and (4) an identity of claims actions between the two. *Heike v. Central Mich. Univ. Bd. of Trs.*, 573 F. App'x 476, 480 (6th Cir. 2014) (citing *Sanders Confectionery Prods., Inc. v. Heller Fin. Inc.*, 973 F.2d 474, 480 (6th Cir. 1992)).

*Walters v. Challenge Mfg.*, No. 1:20-cv-191, 2020 WL 5821906 at *2 (Sept. 15, 2020), *R&R adopted*, 2020 WL 5820958 (W.D. Mich. Sept. 30, 2020).

### B. Discussion

In its motion to dismiss, ADP contends that *DDS III* involves the same parties and arises from the same transactions as *DDS I*, in which "Plaintiffs brought a breach-of-contract claim alleging that they were underpaid for drywall finishing performed under the same contract on two projects: Aspen Lakes and Knapp's Corner." *DDS III* (ADP's Brief, ECF No. 6, PageID.22). ADP also contends that after the close of discovery and after the filing of ADP's motion for summary judgment, "Plaintiffs decided they would like to add claims for work on (1) Aspen Lakes and Knapp's Corner that they *didn't* perform because Defendant assigned the work to other contractors, and (2) the third project, Haven." *Id*. ADP contends that *DDS III* should be dismissed because, "The rule against claim splitting prohibits a plaintiff from scattering a single contractual dispute across multiple lawsuits—especially where all of the alleged breaches occurred before the first action was filed." *Id*.

In their response, plaintiffs appear to state that *DDS III* seeks damages for work at Knapp's Corner and Aspen Lakes which ADP assigned to other contractors in violation of the same contract(s)/agreement(s) at issue in *DDS I*:

> While it is true that the parties involved in the present case are the same as in the other pending claim, it is important to clarify that the claims being asserted are distinct. Despite Defendant's complaints about the similarity of language, the underlying cause of action for the present case differs from that of the other claim. In the first complaint, Plaintiffs filed an action for breach of contract based on their engagement by the Defendant to perform work on the Knapp's Corner and Aspen Lakes projects. Defendant's failure to compensate Plaintiffs and their interference with the completion of the project constituted a breach of their valid oral agreement. However, the damages sought in the second complaint pertain to the work that Defendant wrongfully assigned to other contractors, which Plaintiffs believe should be included in their claim. It should be noted that Plaintiffs believed the second complaint to include damages for the work that Defendant wrongfully assigned to other contractors. However, out of an abundance of caution, Plaintiffs approached Defendant to clarify damages in the second amended complaint. Defendant responded that they did not believe the amended complaint included a cause of action for damages for the work that Plaintiffs were prevented from completing. Plaintiffs attempted to amend, and asked Defendant for permission to do so in order to clarify. Defendant responded that they would oppose such an action. As a result, Plaintiffs attempted to cure the issue by filing a separate cause of action, under the theory that the work that Defendant prevented them from completing was a separate and distinct breach of contract.

*DDS III* (Plaintiffs' Corrected Response, ECF No. 8, PageID.50-51).

Both *DDS I* and *DDS III* involve plaintiffs' claims arising from the work performed at Aspen Lakes and Knapp's Corner. The issue for the Court is whether plaintiffs engaged in improper claim splitting by suing ADP for breach of the contract(s)/agreement(s) at Aspen Lakes and Knapp's Corner in both *DDS I* and *DDS III*. Based on plaintiffs' complaints, the Court concludes that *DDS III* involves impermissible claim splitting because it seeks damages for breach of the same contract(s)/agreement(s) which are the subject of plaintiffs' lawsuit in *DDS I*: plaintiffs have brought two different lawsuits based on the same set of facts; both lawsuits involve breach of the same contract(s)/agreement(s); and, a final decision on the merits in *DDS I* would resolve the breach of contract claims at issue in both *DDS I* and *DDS III*. *See Walters*, 2020 WL 5821906 at *2. Accordingly, ADP's motion to dismiss *DDS III* will be granted.

### III. Conclusion

For these reasons, defendant ADP's motion to dismiss (ECF No. 6) will be **GRANTED**.  A separate order consistent with this opinion will enter.

Dated:  December 5, 2023          /s/ Ray Kent
                                  RAY KENT
                                  United States Magistrate Judge